## Commonwealth *v.* Martin, Appellant.

Argued November 9, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Herbert O. Schaeffer,* with him *Metzger & Wickersham,* for appellant.

*Carl B. Shelley,* Assistant District Attorney, with him *Karl E. Richards,* District Attorney, for appellee.

OPINION BY JAMES J., January 29, 1937:

On January 4, 1936, John Martin, appellant, was charged on an information before an alderman that on December 12, 1935, he unlawfully kept and possessed 56 five-gallon cans of moonshine whisky in a certain barn on premises occupied by Anna Mason. For this offense he was subsequently indicted. For possession of the same liquor, Charles Leas, Charles Berstler and Francis Berstler were jointly indicted and Anna Mason was separately indicted. The three cases were called for trial together and Leas and the Berstlers entered their

pleas of guilty. Martin and Anna Mason moved for a separate trial, which was denied. Anna Mason was found not guilty but directed to pay the costs; Martin was found guilty and from the sentence imposed, has taken this appeal.

This appeal involves two questions: First, should a separate trial have been granted; and, second, is there sufficient evidence against the appellant to sustain a verdict of guilty of possession of unlawful liquor.

On the evening of December 12, 1935, enforcement officers of the Liquor Control Board raided a roadhouse known as the "Holland Inn," operated by Charles Leas and found 56 five-gallon cans of liquor. The presence of the liquor was accounted for by the testimony of Charles Leas, Francis Berstler and Charles Berstler, who testified that they conveyed the liquor by truck, owned by Leas, from the farm of Anna Mason between 12 and 1 o'clock on the morning of December 12. The testimony connecting the defendant with the liquor was as follows: Charles Leas testified that at 7 o'clock on the morning of December 12, he saw the defendant prowling around his premises; that Martin examined the tires and wheels of the truck, and that at about 8.30 Martin "asked me where my truck was that night . . . . . . He said that some of his stuff was hauled on that truck that night"; and that Martin stated he had measured the tires, the tracks and the wheels where that truck was that night. Charles Berstler testified that about 7 o'clock on December 12 he saw John Martin talking to Leas and he heard him say "that something is missing from him, was taken"; that Martin then examined the truck, which had been used to haul the liquor, and examined the tires; that on the evening of the same day, Leas and the Berstlers met Martin in Middletown and Martin said "he wanted his stuff back . . . . . . his stuff back that was taken from him . . . . . . He said he wanted his stuff back or he would know the reason why he

wouldn't get it"; and that Martin said to them "you stole my liquor" and "you stole my 'alchi.'" Francis Berstler testified that on the morning of December 12, Martin came to his home and examined a Ford truck which was on the premises; that Martin asked him, "Do you know anything about this liquor was taken last night?"; that Martin then said, "I tracked the truck and ...... I know whose truck hauled it and I know who hauled it ...... I either want the liquor or I want [to be] paid for it ...... I know where it went to, and I traced the truck clear up to the place ...... If I would have been there somebody would have had bloody heads." The witness further testified that at the time his mother was present, she said to Martin, "John ...... why do you do something like that if it is unlawful?" and that Martin replied, "I don't make it, I only sell it."

Alice Berstler, mother of Charles and Francis Berstler, testified that on the morning of December 12, Martin came to her home looking for her son Francis; that Martin said to Francis, "Do you know, Francis, anything about my liquor ...... that was stolen last night?"; that Martin further said, "I know something about it for I followed the truck ......: I measured the tires and I know where it went to." She also stated that Martin examined their Ford truck on the premises; that later in the day Martin came back, asked permission to search, and did search about the farm; that Martin then spoke "about his liquor" and said, "I can't stand this big loss, 56 five-gallon cans ...... that is too big a loss ...... I can't stand it." She then asked him why he made something that wasn't allowed to be made and sold, and he replied, "Mrs. Berstler, I don't make it any more, I buy it and sell it." Other testimony placed defendant on the morning of December 12, examining the tire tracks in the lane leading to the Mason home.

(1) The authority of a trial court to consolidate for

trial separate indictments of defendants, was comprehensively discussed by Judge PARKER in *Com. v. McCord,* 116 Pa. Superior Ct. 480, 486, 176 A. 834, in which an allocatur was refused by the Supreme Court, where it was stated: "The true rule would now appear to be that just as in cases where a defendant is charged in one indictment by separate counts with different offenses, or where one defendant is charged in separate indictments with different offenses, so likewise where two defendants are indicted for the same misdemeanor growing out of the same matters and circumstances so related that the proofs received in one would be competent in the other, even though the defendants demand separate trials, whether either will be prejudiced by a joint trial and they are therefore entitled to a severance is a matter for the trial court to determine in the exercise of sound discretion, and the appellate courts will not reverse except for a clear abuse of such discretion." This rule was later approved in *Com. v. Dauphinee et al.,* 121 Pa. Superior Ct. 565, 183 A. 807. When the present case was called for trial, it was stated that the indictments covered the same date, the same liquor and was located on the farm of Anna Mason. With the exception of declarations alleged to have been made by Anna Mason, which the court cautioned the jury were only to be considered as evidence against her, the testimony submitted by the Commonwealth would have been the same testimony submitted against the appellant had he been tried alone upon the indictment charging him with possession. Under such circumstances, no abuse of discretion was committed by the trial court in directing the consolidation of the indictments.

(2) Although the record does not show how or when the liquor reached the Mason farm, still if the admissions made by appellant were believed by the jury, they were sufficient to establish his ownership of the liquor. The inferences to be drawn from his statements, made

a few hours after the liquor had been removed from the farm, and his active interest and efforts to locate the liquor, all bore a direct relationship to the question of ownership. Appellant argues, however, that such proof did not establish such dominion and control as to constitute possession within the meaning of the act of assembly. The Act of July 18, 1935, P. L. 1246 provides in section 602 (b) : "It shall be unlawful for any person ..... to possess any liquor within this Commonwealth which was not lawfully acquired prior to January the first, one thousand nine hundred and thirty-four, or has not been purchased from a Pennsylvania Liquor Store ......"; and by section 602 (d) : "It shall be unlawful for any person ...... to have or keep any liquor within the Commonwealth, unless the package ...... in which the liquor is contained has, while containing that liquor, been sealed with the official seal of the board." The words "possess" "have" or "keep" as we interpret them are synonymous. Appellant was indicted under section 602 (b) and the indictment charged that appellant "did ...... keep and have in his possession certain alcoholic liquors, viz: a large quantity of moonshine whiskey." If the testimony of the Commonwealth was believed, appellant was the owner of the liquor, which is a far broader term than possession from which ownership, dominion and control could be inferred. But in addition to the ownership, from his efforts to locate the liquor, the jury could infer that appellant was attempting to regain the dominion and control which he had while the liquor was at the farm. The language of the act is not restricted to the actual physical possession of illegal liquor, and in interpreting the act, it is our duty to liberally construe its provisions for the accomplishment of its purpose, to wit, to prohibit transactions in liquor and alcohol within this Commonwealth, except by and under the control of the liquor board, unless otherwise expressly provided for. As we

view the term possession, it is the minimum degree of ownership or control punishable under the provisions of the act. If we were to restrict this act only to those who had actual physical possession—the mere tools of the owner—and allow the real owner to escape, we would nullify the very purpose of the act. It is the owner of illegal liquor who is responsible for the illegal traffic, and in whose favor no interpretations of extreme legal nicety should be made.

The facts in the present case are clearly distinguishable from the facts in the cases cited by appellant. In the present case, we have proof of ownership, while in the cases to which we have been referred, the ownership or possession could only be inferred from the finding of liquor at a location owned, occupied or controlled by the defendant.

The judgment is affirmed and the record remitted to the court below and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part of it, which had not been performed at the time the appeal in this case was made a supersedeas.