## Commonwealth v. Smith

*Jack M. Myers*, for Commonwealth.

*C. C. Carson, Jr.*, for defendant.

SHOYER, J. May 28, 1958.—Defendant was tried on May 7, 1958, before me, specially presiding without a

jury, on two bills of indictment charging him with the unlawful possession of untaxed liquor. Both arrests had been made at his place of residence, 1738 North Thirteenth Street, Philadelphia.

In bill no. 1528 the offense was alleged to have occurred on September 28, 1956, when defendant admitted police officers to his first floor rear apartment where there were 10 other male persons seated and standing around. The "white whiskey", properly identified, was found under the mattress in the only bedroom in two gallon jugs, partly filled. Defendant stated that it was his apartment but other than that refused to make any statement. The bill of indictment also charged him with being a second offender and proof of conviction of a first offense on January 12, 1956, in accordance with the indictment was made on the trial before me.

In bill no. 1122, defendant was jointly indicted with one Robert Thompson, now a fugitive, for an unlawful possession on December 1, 1956, and that bill also charged defendant with the earlier offense for which he had been convicted in January, 1956. The arresting officers testified that looking through a window into the kitchen they observed Thompson, the other named defendant, dumping the contents of a coffeepot into another pot, which was in the sink, the contents of which latter pot were confiscated and identified as "white whiskey". Again, defendant was the one who answered the door and permitted the police officers to enter. Both defendant and Thompson admitted they lived there, but other than that they refused to make any statement. Counsel for defendant stipulated that the evidence as to the first conviction in January, 1956, would also be the same.

Defendant took the stand to testify as to his arrest in September of 1956, bill no. 1528. He testified that he told the officers that it was not his liquor. He also testi-

fied that the rear apartment was not his, but only the first floor front. A question of credibility was thus presented to me as the trial judge sitting without a jury and I believed the testimony of the police officers.

Counsel for defendant moved for arrest of judgment as to bill no. 1122, and for a new trial and for arrest of judgment as to bill no. 1528. At the request of the court both motions were argued forthwith.

The court reporter did not report the gist of the argument (apparently in accordance with his usual practice) but the only point argued involved the question of possession under bill no. 1122. It was counsel's contention that, inasmuch as Thompson had actual physical possession of the coffeepot, defendant Smith could not be found guilty of possession of the same liquor. The court dismissed the motions made by defense counsel and imposed a prison sentence of three to six months in the county prison on each bill, to run consecutively.

The present appeal was then taken to the Superior Court and this opinion is filed pursuant to their rule 43.

These bills were drawn so as to charge defendant (alone in bill no. 1528, and jointly in bill no. 1122) with violations under article IV, sec. 491, of the Liquor Code of April 12, 1951, P. L. 90, 47 PS §4-491. The second count in each bill alleges a violation under subsection (2) of the statute, which reads:

"It shall be unlawful . . .

"(2)  For any person . . . to possess . . . any liquor or alcohol within this Commonwealth which was not lawfully acquired prior to January first, one thousand nine hundred and thirty-four, or has not been purchased from a Pennsylvania Liquor Store or in accordance with the board's regulations. The burden shall be upon the person possessing . . . such liquor or alcohol to prove that it was so acquired. . . ."

The third count in each bill alleges a violation under subsection (4) which reads:

"It shall be unlawful . . .

"(4) For any person, . . . to have or keep any liquor within the Commonwealth unless the package (except the decanter or other receptacle containing liquor for immediate consumption) in which the liquor is contained while containing that liquor bears the official seal of the board." . . .

Primarily, the evidence on both bills presented a question of fact. Defendant testified that he lived in the first floor front but he said it was "a whole flat". However, he had failed to make this explanation to the officers when afforded an opportunity to do so at the time of the two arrests. Having admitted that he lived in the premises, the only issue that could then arise would be that involving ownership or control of the liquor. The arresting officers were warranted in inferring that ownership of, and consequently unlawful possession of, the liquor was imputable to the master of the premises under bill no. 1528 and the trier of fact so found: Commonwealth v. Dombkowski, 86 Pa. Superior Ct. 468.

As to bill no. 1122, the fact that Thompson had physical possession of the coffeepot from which he was pouring the liquor into the sink would not preclude this defendant's having constructive, and hence unlawful, possession within the meaning and the purpose of section 491. Had Thompson been available for trial, he too could have been found guilty for the reason that the two defendants jointly shared the possession which was made illegal by the act of assembly. The two were admittedly comasters of the premises. Physical possession of the premises by one alone, in the absence of the other, would not deprive the absentee of his right of dominion and control over the premises. Here the joint masters of the premises were both present. Actual phy-

sical possession of the liquor was in Thompson alone at the time of the arrest, but this fact fully supports the inference that Thompson was then and there momentarily exercising his individual control for the mutual purpose and advantage of both. "Possession", as used in the statute, is but a component part of the dominion and control embraced by ownership.

For our purposes the Liquor Code of 1951 is a re-enactment of the Pennsylvania Liquor Control Act of July 18, 1935, P. L. 1246, the relevant sections of which were construed by our Superior Court in Commonwealth v. Martin, 125 Pa. Superior Ct. 104, 109. In that case, moonshine whiskey had been found away from defendant's premises and at a roadhouse operated by three others who had been jointly indicted. All four were tried together. The three in charge of the roadhouse pleaded guilty and Martin was found guilty. On appeal, defendant argued that the "proof did not establish such dominion and control as to constitute possession within the meaning of the act of assembly". The court quoted from the Act of July 18, 1935, P. L. 1246, the relevant language of which is identical with that in the present Liquor Code, and overruled defendant's contention as follows:

"The words 'possess', 'have' or 'keep' as we interpret them are synonymous. Appellant was indicted under section 602(b) and the indictment charged that appellant 'did . . . keep and have in his possession certain alcoholic liquors, viz.: a large quantity of moonshine whiskey'. If the testimony of the Commonwealth was believed, appellant was the owner of the liquor, which is a far broader term than possession from which ownership, dominion and control could be inferred. . . . The language of the act is not restricted to the actual physical possession of illegal liquor, and in interpreting the act, it is our duty to liberally construe its provisions for the accomplishment of its purpose,

to wit, to prohibit transactions in liquor and alcohol within this Commonwealth, except by and under the control of the liquor board, unless otherwise expressly provided for. As we view the term possession, it is the minimum degree of ownership or control punishable under the provisions of the act. If we were to restrict this act only to those who had actual physical possession—the mere tools of the owner—and allow the real owner to escape, we would nullify the very purpose of the act. It is the owner of illegal liquor who is responsible for the illegal traffic, and in whose favor no interpretations of extreme legal nicety should be made."

For the above reasons, viewed in the light of the cited decisions from our Superior Court reports, the trial judge did not err in overruling defendant's motions for a new trial and in arrest of judgment.